The opinion of the Court was delivered by
Fenner, J.
Plaintiff sues defendants for the price of certain real estate sold to plaintiff by E. Y. Jourdain, the ancestor of defendants, on May 3d, 1836, and from which plaintiff was evicted on May 27th, 1878.
The answer of defendants admits the sale hut avers that the sale from Jourdain to plaintiff contained a stipulation of no warranty, and that plaintiff, at date of purchase, was aware of the danger of eviction, and purchased at its peril and risk.
The act of sale contains a warranty against all troubles, evictions, etc., u provenant de ses fait-s et promesses seiilement.'1''
The French authorities agree that such a clause as the above is equivalent to an express stipulation of non-warranty against troubles, evictions, etc., arising from the acts or promises of others than the vendor himself. 1 Troplong, Yente, p. 610, Nos. 478-9-80.
*650 Warranty, as a general rule, is of tlie nature, and not of the essence, of the contract of sale; the only exception being that the vendor is, under all circumstances, “ accountable for what results from his personal act, and any contrary agreement is void.” C. C. 2504.
In all other respects, the jiarties may, “ by particular agreement,” add to, or diminish, or even abrogate, the obligation of warranty. C. C. 2503.
But with regard to the effect of such “particular agreements,” the law distinguishes between the different consequences of eviction.
The mere stipulation of non-warranty frees the seller from liability for fruits or revenues, costs aud damages; but with regard to the price, the case is different. Nee enim home field contractus hane patitur corwentionem, ut cmptor reni amitteret, et venditor pretium retineret, was the equitable doctrine of the Roman law. Dig. L. 11, § 18, De act. empti.
Our own Code expressly provides that “ even in case of stipulation of no warranty, the seller, in case of eviction, is liable to a restitution of the price, unless the buyer was aware, at the time of the sale, of the danger of the oviction, and purchased at his peril and risk.” C. C. 2505.
This Article is a literal translation of Art. 1629 of the Code Napoleon, except that the latter uses the disjunctive or, instead of the conjunctive and, in the last phrase of the Article.
Counsel for plaintiff contends that the effect of this change in our law from the French Code, is to require the concurrence of three elements in order to create an exemption from restitution of the price, viz: 1st, stipulation of no warranty; 2d, knowledge of buyer, at time of sale, of danger of eviction; 3d, express stipulation in the act that the buyer bought at his peril and risk.
We cannot adopt this interpretation. We think, with the District Judge, that our Article means the same as if it read: “Unless the buyer was aware, at the time of the sale, of the danger of the eviction, and thus or therefore purchased at his peril and risk.” In other words, the law moans that the buyer who acquires under a clause of non-warranty, having, at the time, knowledge of the danger of the eviction, is held, by implication from those facts to purchase at his risk and peril, and cannot, therefore, sue for restitution of the price.
When, on the other hand, the act contains an express stipulation that the buyer purchases at his peril and risk, it would seem to be of no consequence what knowledge he had of the danger of eviction, or even, perhaps, whether there was a stipulation of no warranty or not. “ In that case,” says Marcadé, “the object of the sale is not properly the thing itself, but merely the pretensions and claims which the vendor may have upon this thing. The seller then fulfils his promise com *651 pletely by the simple fact of transferring his rights, whatever they may be, and hence the buyer can have no right to reclaim the price, on the ground of eviction from the thing itself. There is no occasion, in such case, to inquire whether the act contains the clause of non-warranty or not, because what the Article says under the assumption of the existence of this clause, would equally result, even in its absence.” 6 Marcadé, p. 262; 6 Mourlon, No. 573 ; 1 Duvergier, 341.
Our Code expressly recognizes the sale of an uncertain hope, such as the haul of the fisher’s net before he throws it, and maintains the sale, although he should catch nothing. C. C. 2151.
In this case, there is no such express stipulation, and under our construction of Art. 2505, considering the clause of non-warranty, and considering that nothing is claimed beyond the restitution of the price, we have only to inquire whether the plaintiff “ was aware, at the time of the sale, of the danger of the eviction.”
The record furnishes no evidence whatever that the vendor communicated to plaintiff, or that the latter otherwise had knowledge of any particular real or suspected defect of title, from which any danger of eviction might have been anticipated. The sale took place more than forty j'ears ago,- and naturally evidence outside of the act itself is wanting.
The sole ground on which defendants rely, to establish plaintiff’s knowledge of the danger of eviction, is the following clause in the act: “ The property presently sold belongs to the- vendor, by means of the acquisition which he has made thereof from Mr. Raymond Mansana, according to an act passed before the undersigned notary, on the 24th of February last, to which the parties declare that they refer for fuller information.”
Referring to the sale from Mansana, we find it to be a sale with full warranty, at the same price for which it was subsequently sold to plaintiff.
That act, however, also sets forth the origin of Mansana’s title as derived by sale from syndics of the creditors of Louis Bierra, made on the 19th of August, 1823.
Bierra had acquired the property from Relf & Chew, claiming to be (but finally decided not to be) executors of Daniel Clark.
By these successive references, defendants contend that plaintiff acquired full knowledge of ttlie authorship of Jourdairfs title; that it was thus advised that the title was derived mediately from a syndic’s sale, and that this was sufficient to inform it of the danger of eviction.
We cannot admit the correctness of this view. ■ There is nothing apparent on the face of any of the acts referred to, suggesting any cause *652 for, or danger of, eviction. Mansana, who had acquired at the syndics’ sale, had held the property for thirteen years, without disturbance, and then sold to Jourdain with full warranty. The mere fact that the property was derived from a syndic’s sale, does not, necessarily or naturally, import any defect of title or danger of eviction. Indeed, in many respects, titles derived from judicial sales are more secure than private titles.
A syndic’s sale is analagous to the sale under execution, as to which the Code declares that “ it transfers the property of the thing to the purchaser as completely as if the owner had sold it himself; but it transfers only the rights of the debtor such as they are.” C. C. 2620.
The latter clause does not signify, as substantially contended by defendants, that such a sale amounts merely to a quit-claim. On the contrary, the following Article gives the purchaser, in case of eviction from the property, recourse for reimbursement against the debtor and creditor. So, in ease of a syndic’s sale, the evicted purchaser would have his recourse against those who had received the price.
We have carefully considered this question and can find neither reason nor authority in support of the position that mere knowledge of the sources of the vendor’s title dispenses with the necessity of establishing knowledge of the danger of eviction, in order to bar the claim for restitution of the price; unless, indeed, the titles referred to have infirmities so patent on their face, that the buyer would be thereby affected with notice.
The latter feature is distinctly presented in the cases of Carrian vs. Rieffel, 2 N. S. 621; Boisblanc vs. Markey, 21 A. 721, and in the French case of Dulut contre Deloffre, J. P. 1846, 1, 576.
We think the knowledge of the danger of eviction, referred to in the Code, means actual knowledge, which must be brought home to him by direct i>roof, or by implication from references to, or proof of, collateral facts, so strong as to be equivalent thereto. See Fletcher vs. Cavalier, 4 La. 274.
The plaintiff asserts, in its abstract of facts, that the present defendants represent one-half the succession of E. V. Jourdain. Defendants, in their counter statement, deny this averment, but fail to state what the correct facts are, .as required by the Rule. The record itself is confused on the subject, and, unacquainted as we are with the facts, would require at our hands the elucidation of an extensive and complicated family-tree, in order to ascertain the interest of each defendant. We Shall, therefore, for the purposes of this decree, accept the statement of plaintiff, reserving the right, in case of error, shown, to correct it on application for rehearing.
*653 It is, therefore, ordered, adjudged and decreed, that the judgment appealed from be annulled, avoided and reversed, and it is ordered that there be judgment in favor of plaintiff and against the defendants, for the sum of fifteen hundred dollars, with interest from May 27th, 1878 ; defendants and appellees to pay costs of the lower court and of this appeal.
Rehearing refused.
Levy, J.f absent.